STEVENS, Respondent, vs. FREUND and another, Appellants.

*March 6—April 2, 1919.*

*Negotiable instruments: Collateral security: Holder in due course: Note given as part of wagering transaction: Trade-increasing contest: Guaranty of results.*

1. Where a promissory note was duly transferred as collateral security to an innocent holder for value in due course, one who thereafter purchased it and the debt secured thereby from such holder became, if not himself a party to any fraud or illegality affecting the instrument, entitled to all the rights of said holder in due course; and except in the cases mentioned in sec. 1676—27, Stats., the defense that the note was originally obtained by fraud is not available as against him.

[2. Whether, under sec. 1676—27, Stats., the defense that a note was given as a part of a gambling or wagering transaction is available as against a holder in due course, not decided.]

3. A contract by which defendants agreed to enter upon a trade-increasing contest for which the prizes, plans, and advertising matter were to be furnished by one P., and to pay him $298 therefor, and he guaranteed that their sales of goods for the next year's business should equal a certain sum and that if 0.75 per cent. of such sales did not amount to $298 he would pay the deficiency in cash, was not illegal or void under sec. 4538, Stats., as being a gambling or wagering transaction; and a note given by defendants to P. for said $298 was therefore valid and enforceable by a holder in due course.

APPEAL from a judgment of the circuit court for Calumet county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

Action upon a promissory note executed by the defendants to the order of the Lyon–Taylor Company. The defense was that the note was obtained by fraud and was void because given as a part of a gambling transaction. The action was tried by the court without a jury and the trial court found against the defendants as to both defenses. The facts were in brief as follows: In March, 1914, the defendants were conducting a general mercantile business at New Holstein, Calumet county, Wisconsin, and one M. F. Price, under the trade-name of Lyon–Taylor Company, was doing business at Iowa City, Iowa, introducing so-called trade-increasing contests. Price's agent came to New Holstein and induced the defendants to enter on a trade-increasing contest, the prizes, plans, and advertising matter to be furnished by Price. A written contract was entered into by which Price agreed to furnish to the defendants the prizes, consisting of certain plated silverware and tickets for railroad tours, also all advertising matter, bulletins, rules for the contest, etc., and the defendants agreed to stage a contest among their patrons under the rules and instructions furnished them, and as a part of their agreement the note in suit for $298 was given in payment for the prizes, printed matter, and assistance of Price. The contest was in brief a voting

contest; every purchaser of goods to a certain amount received votes which he could cast for the young lady whom he deemed most deserving, and at the close of the contest the prizes were to be awarded in accordance with the published rules by an impartial board, the chief prize going to the contestant having the most votes, and so on down the list. Price also agreed to give a bond of $500 to cover his part of the agreement (which bond was in fact given), and guaranteed that the defendants' sales of goods for the next year's business should equal $40,000, and that if 0.75 per cent. of said year's sales did not amount to $298 he would pay to the defendants the deficiency in cash.

The note in question was attached to the contract, but the agreement provided that Price should detach it and accept it in full settlement for the goods and printed matter and his expense in assisting and instructing the defendants as to the plan.

The defendants started the contest but abandoned it. Price detached and indorsed the note before due to the First National Bank of Iowa City, with other notes, as collateral security for money loaned by the bank to Price. The plaintiff afterwards purchased of the bank Price's notes and the collaterals, including the note in suit, and Price's notes are still unpaid. The defendants appeal from judgment for the plaintiff upon the note.

The cause was submitted for the appellants on the brief of *J. E. McMullen* of Chilton, and for the respondent on that of *L. P. Fox* of Chilton.

WINSLOW, C. J.    The note in question passed into the hands of an innocent holder for value in due course before due and was transferred by that holder to the plaintiff. There is no evidence that the plaintiff was a party to any fraud or illegality affecting the instrument, and hence, under the express terms of the negotiable instrument law, he pos-

sesses all the rights of the holder in due course.   Secs.
1676—22 and 1676—28, Stats.

A holder in due course holds the instrument "free from
any defect of title of prior parties, and free from any de-
fenses available to prior parties among themselves, . . . except
as provided in sections 1944 and 1945 of these statutes, relat-
ing to insurance premiums, and also in cases where the title
of the person negotiating such instrument is void under the
provision of section 1676—25 of this act."   Sec. 1676—27,
Stats.

This section entirely cuts off the defense of fraud, so that
it becomes unnecessary to consider it.   The defendants,
however, claim that the note was an integral part of a gam-
bling or wagering transaction and hence was void under sec.
4538, Stats., which makes absolutely void all contracts or
notes given for money wagered or staked on the result of a
game under any name whatsoever.

It is argued that the provision of the contract by which
Price agreed that if 0.75 per cent. of the year's sales did not
amount to $298 he (Price) would pay the deficiency in cash,
amounts to a bet or wager and is within the prohibition of
the gaming statute.

We are unable to agree with this contention.   The agree-
ment is unusual, certainly, but in our judgment not immoral
or illegal.   In effect it is simply a guaranty that the de-
fendants' business will be increased to a certain figure if
they will purchase the prizes and advertising matter and
adopt the trade-increasing program offered by Price, coupled
with an agreement that, if the increase does not take place,
Price will take a less sum for the prizes, advertising matter,
and services furnished by him.

The question whether this latter defense would be of any
avail as against a holder in due course seems doubtful under
the provisions of sec. 1676—27, Stats., above quoted.
*Arnd v. Sjoblom,* 131 Wis. 642, 111 N. W. 666.   It is un-

necessary, however, to pass upon that question in this case, and we express no opinion on it.

*By the Court.*—Judgment affirmed.

KERWIN and ROSENBERRY, JJ., took no part.